UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 7:16-cv-00086-GFVT

VICKIE Y. DAMRON,                                                  PLAINTIFF

VS.      ACTING COMMISSIONER'S OPPOSITION TO PLAINTIFF'S
            MOTION FOR PRELIMINARY INJUNCTION

CAROLYN W. COLVIN, Acting Commissioner             DEFENDANT
   of Social Security.

*******

The Acting Commissioner (Commissioner) opposes Plaintiff's motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a).

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

This lawsuit arises out of an investigation conducted by the Social Security Administration (SSA)'s Office of Inspector General (OIG) into a complex disability fraud scheme that resulted in the federal indictment of prominent attorney Eric C. Conn, former SSA Administrative Law Judge (ALJ) David Daugherty, and a medical source. *See* Indictment, *United States v. Conn*, No. 5:16-cr-22 (E.D. Ky. Filed Apr. 1, 2016). The indictment alleges that Daugherty assigned Conn's cases to himself; that Daugherty solicited falsified medical evidence from Conn so that he could issue favorable on-the-record decisions without hearings; that Conn provided pre-completed template residual functional capacity reports to doctors who signed them without amendment; that Conn received fees from the SSA; and that Conn withdrew cash from his business account to make payments to Daugherty. *Id*. at 9-19. The indictment alleged that the conspirators "intended that the SSA disburse retroactive and proactive disability benefits, [in]

an amount to exceed $600,000,000 . . . irrespective of the Claimants' actual entitlement to benefits." *Id*. at 16.

In 1994, Congress enacted sections 205(u), 1129(l), and 1631(e)(7) of the Social Security Act (Act), 42 U.S.C. §§ 405(u), 1320a-8(l), 1383(e)(7), as part of a program integrity effort to address precisely these types of fraud schemes. Pub. L. No. 103-296, § 206(d), the Social Security Independence and Program Improvements Act of 1994, 108 Stat. 1464, 1514. Read together, these provisions require that, as soon as SSA's Inspector General has reason to believe that fraud was involved in an individual's application for disability benefits, it must make that information available to the agency, and the agency must "immediately redetermine" the individual's entitlement to benefits and "disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence." *Id.* If after conducting the redetermination, the agency determines that there is insufficient evidence to support the individual's entitlement to benefits, the agency "may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayments." 42 U.S.C § 405(u)(3); *see also* 42 U.S.C. § 1383(e)(7)(C).

Consistent with those statutory requirements, following an SSA OIG referral in May 2015 reporting that there was a reason to believe that fraud was involved in Plaintiff's application, SSA informed Plaintiff that it was redetermining the previous decision granting her disability benefits. She received an opportunity for a hearing before an ALJ and an opportunity to testify and submit evidence that was new, material, and related to the period at issue. If she had requested, the agency would have assisted in obtaining records in support of her original allowance during the redetermination. She continued to receive benefits during the redetermination process.

As a result of that redetermination, the agency found that there was insufficient evidence supporting Plaintiff's entitlement at the time she was originally awarded benefits and it terminated her benefits and is the process of assessing an overpayment. Plaintiff seeks to enjoin SSA from proceeding "until the legality of Social Security's procedures can receive a merits decision." (ECF No. 17-1 (Pl.'s Mem.) at 2). SSA's actions are fully consistent with the relevant statutory sections, sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7), the Administrative Procedure Act (APA), and the Constitution, and therefore, Plaintiff cannot meet the strict requirements justifying the "extraordinary and drastic remedy" of injunctive relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curium) (citation omitted). In a recent ruling in a related case, the court denied a similar motion to enjoin redeterminations in these cases because plaintiffs had not clearly shown their likelihood of success on the merits. *Robertson v. Colvin*, No. 3:16-cv-02113, 2016 WL 3406134, at *5 (S.D. W.Va. June 17, 2016). Likewise, Plaintiff's motion should be denied.

## BACKGROUND

As Plaintiff has averred, she was found disabled by ALJ Daugherty in a decision dated July 31, 2008 (Pl.'s Mem. at 2). The ALJ issued a fully favorable decision without a hearing by relying on evidence from Dr. Frederic Huffnagle. At the time, Plaintiff was represented by Conn. *Id.* As discussed below, Dr. Huffnagle is one of the four doctors implicated in the Conn fraud scheme.

Plaintiff's lawsuit arises out of the redetermination process set forth in sections 205(u) and 1631(e)(7) of the Act. 42 U.S.C. §§ 405(u), 1383(e)(7). These sections require SSA to "immediately redetermine" an individual's entitlement to benefits whenever there is "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits" and, in the process, to "disregard any evidence" if there is reason to believe that fraud

3

or similar fault was involved in providing that evidence. 42 U.S.C. §§ 405(u)(1), 1383(e)(7)(A). "If, after redetermining pursuant to this subsection the entitlement of an individual to monthly insurance benefits, the Commissioner of Social Security determines that there is insufficient evidence to support such entitlement, the Commissioner of Social Security may terminate such entitlement and may treat benefits paid on the basis of such insufficient evidence as overpayment." 42 U.S.C. § 405(u)(3); *see also* 42 U.S.C. § 1383(e)(7)(C).

Under the redetermination process, if the Appeals Council (AC) remands a case to an ALJ for a hearing and a new decision, the individual may submit statements or evidence up to the date of her hearing in support of the original disability determination, regardless of whether the individual previously submitted that evidence to the AC. Social Security Ruling (SSR) 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016). If the ALJ issues a decision finding that an individual was not entitled to benefits at the time she was originally awarded benefits, that individual's benefits will then be terminated. The individual may subsequently request review by the AC. *See* 20 C.F.R. §§ 404.967-68, 416.1467-68. If the AC issues a decision, that decision will constitute the final agency decision. 20 C.F.R. §§ 404.981, 416.1481. If the AC decides not to review the ALJ's decision, the ALJ's decision will constitute the final agency decision. *Id.* In either situation, a dissatisfied individual may then seek judicial review. 42 U.S.C. §§ 405(g)-(h).[1]

On May 12, 2015, pursuant to section 1129(l) of the Act, 42 U.S.C. § 1320a-8(l), the SSA OIG informed the agency that there was reason to believe that fraud was involved in the

---

[1] Although §§ 405(g)-(h) apply only to judicial review of title II benefits determinations, the statute governing judicial review of title XVI cases, 42 U.S.C. § 1383(c)(3), expressly adopts § 405(g)'s standards. See 42 U.S.C. § 1383(c)(3). For ease of discussion, this brief will refer exclusively to § 405(g), on the understanding that the same analysis applies to § 1383(c)(3).

4

applications for benefits of approximately 1,800 individuals (*See* ECF No. 10-1, Declaration of Nirmal Patel (Patel Decl.) ¶ 3, Attachment 2). Specifically, the SSA OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" residual functional capacity forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of the individuals' applications for benefits. *Id.* A copy of this referral is made available in the claims file of individuals subject to a redetermination. Hearings, Appeals, and Litigation Law Manual (HALLEX) I-1-3-25 (updated Feb. 25, 2016), available at https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-25.html ("If OIG has identified the individual pursuant to section 1129(l) of the Act, SSA will provide a summary of the OIG investigative findings, as well as a copy of the OIG 1129(l) referral, with the notice or in the claim(s) file.").

Following receipt of this information, sections 205(u) and 1631(e)(7) of the Act require SSA to redetermine those individuals' entitlement to benefits. 42 U.S.C. §§ 405(u), 1383(e)(7). Plaintiff was one of those individuals. Shortly after the SSA OIG's referral, on May 18, 2015, SSA notified Plaintiff that there was reason to believe fraud or similar fault was involved in her application for benefits, and that SSA was required to redetermine her entitlement to benefits under sections 205(u) and 1631(e)(7) of the Act and disregard the evidence from Dr. Huffnagle (Patel Decl. ¶ 4, Attachment 3). SSA invited Plaintiff to submit more evidence or a statement about the facts or law in her case (*id.*). On August 21, 2015, SSA notified Plaintiff that it had considered any evidence submitted along with the other evidence of record, but that there was insufficient evidence to support the prior ALJ's decision (Patel Decl. ¶ 5, Attachment 4). SSA remanded Plaintiff's case to a new ALJ for a hearing and a new decision (*id.*)

5

The ALJ conducted a hearing on November 19, 2015, at which Plaintiff appeared with a representative (Patel Decl. ¶ 7). After considering the hearing testimony and relevant evidence, the ALJ concluded that there was insufficient evidence in the administrative record to support Plaintiff's original entitlement to benefits (Patel Decl. ¶ 7, Attachment 5). This decision became the agency's final decision when the AC denied Plaintiff's request for review on March 31, 2016 (Patel Decl. ¶ 7, Attachment 6).

Plaintiff filed her complaint with this Court on May 17 2016 (ECF No. 1), and served the Acting Commissioner on May 20, 2016. Under Federal Rule of Civil Procedure 12(b)(6), Defendant moved to dismiss Plaintiff's claims in part on July 15, 2016 (ECF No. 10). On July 27, 2016, Plaintiff amended her complaint (ECF No. 13), to which the Defendant filed a renewed motion to dismiss her claims in part on August 10, 2016 (ECF No. 16). On August 18, 2016, Plaintiff moved for a preliminary injunction (ECF No. 17-1).

## STANDARD OF REVIEW

A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, ***by a clear showing***, carries the burden of persuasion." *Mazurek*, 520 U.S. at 972 (citation and quotation marks omitted) (emphasis in original). The proof required for a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion because a preliminary injunction "is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (citation and quotation marks omitted).

**ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Platt v. Bd. of Comm'rs*, 769 F.3d 447, 453 (6th Cir. 2014).[2] For the reasons explained below, Plaintiffs cannot meet any of these requirements here, much less all four. Accordingly, the motion must be denied.

**I.   Plaintiff Is Unlikely to Succeed on the Merits of Her Claims**

Plaintiff asserts several reasons supporting the likelihood of her success on the merits. These arguments, in summary, contend that the redetermination process outlined in sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7), violates the United States Constitution, the APA, and the Act[3] (*see generally* Pl.'s Mem.). However, these claims are without merit, and therefore, Plaintiff has failed to satisfy the burden required for this Court to grant injunctive relief.

---

[2] By its plain language, *Winter* requires a plaintiff to satisfy all four factors to obtain injunctive relief. *See* 555 U.S. at 20. Prior to *Winter*, the Sixth Circuit generally held that each of these factors should "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction," *Leary*, 228 F.3d at 736, and some more recent Sixth Circuit decisions appear to still follow that approach. *See Liberty Coins LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014); *but see Mason & Dixon Lines Inc. v. Steudle*, 683 F.3d 289, 296-97 (6th Cir. 2012) (concluding that district court correctly denied motion for preliminary injunction while noting only that the underlying claim lacked merit). Although SSA does not believe that this balancing approach is consistent with *Winter*, the motion must be denied under either way of articulating the proper test.

[3] Other cases with similar challenges have been filed in this and other district courts, and the Commissioner's similar motion to dismiss has been granted in each case decided thus far. *See Burchett v. SSA*, 7:16-cv-00062-HRW (E.D. Ky. July 6, 2016), ECF No. 13; *Hitchcock v. SSA*, 7:16 cv 00094-HRW (E.D. Ky. July 26, 2016), ECF No. 9 (motion to vacate dismissal pending).

>   A.  <u>The Redeterminations Do Not Violate the Due Process Clause of the Fifth Amendment, the APA, or the Act</u>.

Plaintiff asserts "[t]he federal government cannot constitutionally deprive a person of the benefits that she depends on based on a secret document containing allegations of fraud" (Pl.'s Mem. at 7).  Plaintiff plainly mischaracterizes the redetermination process under sections 205(u) and 1631(e)(7) of the Act.  SSA has not found that Plaintiff has engaged in fraud nor has it terminated Plaintiff's benefits based on an alleged "secret report."  By law, the agency *cannot* terminate an individual's benefits based on suspected fraud alone.  42 U.S.C. §§ 405(u)(3), 1383(e)(7)(C); *see also* SSR16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016).

However, Congress did not want the agency to ignore "suspected fraud" either.  "When the government suspects that it has been defrauded, it takes action." *Martin v. Colvin*, No. 15-46-ART, 2016 WL 1305891, at * 1 (E.D. Ky. Apr. 1, 2016), *reconsideration denied*, No. CV 15-46-ART, 2016 WL 1305891 (E.D. Ky. Apr. 1, 2016), *pending appeal*, No. 16-5527 (6th Cir. filed Apr. 20, 2016).  Congress directed the agency to "immediately redetermine" the individual's entitlement to benefits, and "disregard any evidence if there is *reason to believe* that fraud or similar fault was involved in the providing of such evidence."  42 U.S.C. §§ 405(u)(1)(A), 1383(e)(7)(C) (emphasis added) [4]; *see also Martin*, 2015 WL 7202484, at *4

---

[4] The legislative history shows that Congress was frustrated with the agency's inability to act immediately based on "suspected" fraud uncovered during a criminal investigation.  In introducing H.R. 4277, Representative Santorum summarized the fraud scheme that prompted the bill as well as the purpose of the new legislation.

> [W]hat we found in this case was, even though this fraud was perpetrated, and 14 people were indicted by California in this fraud case, there were 2,000 people who started to receive benefits in 1993 . . . and yet, the Social Security Administration failed to do one redetermination . . . of any one of these 2,000 people who were involved in this fraud case.
>
> We subsequently, through the work of the subcommittee, convinced Social Security that redeterminations should be done when people who are put on SSI are suspected to [sic]

8

(holding that in redetermining plaintiffs' entitlement and disregarding "allegedly fraudulent medical evidence," "SSA obeyed its statutory commands.").

While Congress compelled the agency to act based on "suspected fraud," it may only terminate Plaintiff's benefits if, *after* disregarding Dr. Huffnagle's evidence, SSA determines that there is insufficient evidence supporting Plaintiff's entitlement.  42 U.S.C. §§ 405(u)(3), 1383(e)(7)(C).  Before it made this determination in Plaintiff's case, the agency offered Plaintiff the opportunity for a hearing before a neutral decisionmaker and to submit additional evidence supporting her entitlement to benefits (Patel Decl. ¶ 6).  S*ee* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016) ("During the redetermination, we will consider evidence that was provided absent fraud or similar fault, and that relates to the individual's entitlement and eligibility from the time of the individual's original allowance, even if that evidence was not presented previously.").  Plaintiff contends that, because she was approved for benefits several years ago, she could not provide the agency with sufficient evidence for the period at issue (Pl.'s Mem. 19-20).  However, the agency considered the evidence that was before the original ALJ and will consider evidence that post-dates the original favorable decision so long as it relates back to relevant period.  S*ee* SSR 16-1p, 81 Fed. Reg. 13436  ("We will consider evidence that postdates the original date of the allowance if that evidence relates to the period at issue.").  The agency will even assist in obtaining evidence if Plaintiff requests assistance.  *See* HALLEX I-1-3-25 (updated Feb. 25, 2016) (SSA will develop evidence when "[a] beneficiary requests assistance in

---

being on there fraudulently.  You would think that that would be an obvious case, but it, in fact, took the work of the subcommittee to get them to do it.

Now we are going to put in statute that anytime you have *a suspicious [sic] of fraud* of someone who gets on the SSI rolls that we will have an immediate redetermination by the Social Security Administration.

140 Cong. Rec. H4750-03, H571, 1994 WL 274789 (emphasis added).

9

developing records that he or she indicates are new, material, and related to the period at issue, and the record does not show that SSA previously made every reasonable effort to develop the same evidence").

Further, even before Plaintiff's benefits were terminated, she was entitled to file a new application, which Plaintiff acknowledges she has already filed (Pl.'s Mem., Attachment 1 (Damron Affidavit) at 2). *See* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016). If SSA assesses an overpayment, she may also seek a waiver of that overpayment. *See* 42 U.S.C. § 404(b) ("In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this title or would be against equity and good conscience."); *see also* 42 U.S.C. § 1383(b)(1)(B). These ample procedural protections mitigate against the risk of erroneous deprivation of benefits, which is at the heart of Plaintiff's process-based challenges.

In addition, it is clear from the statutory scheme that the SSA OIG's "reason to believe" that fraud was involved in the application process triggers the agency's obligation to take action based on that information. Under section 1129(l) of the Act, 42 U.S.C. § 1320a-8(1), which was enacted along with sections 205(u) and 1631(e)(7), Congress directed the SSA OIG to notify the agency once it had reason to believe that fraud was involved in the application of an individual for monthly insurance benefits under title II or for benefits under title VIII or XVI.[5]  As the

---

[5] Congress created the federal Inspector General system as one of the most important tools in the fight against fraud with ultimate responsibility to the public interest. Under the Inspector General Act of 1978, the SSA OIG is directly responsible for preventing and detecting fraud and abuse in SSA's programs and operations. *See* 5 U.S.C. App. § 2(2). To accomplish this mission, OIG directs, conducts, and supervises a comprehensive program of audits, evaluations, and investigations relating to SSA's programs and operations. OIG also searches for and reports

legislative history of section 1129(l) indicates, "Following the initial receipt, or discovery during the course of a criminal investigation, of information that an individual or individuals may have fraudulently obtained SSI benefits, the SSA OIG would undertake such steps as necessary to determine the validity, veracity and viability of such information" and must disclose that information to the agency at the point in time that "the OIG has reason to believe that an individual or individuals have fraudulently obtained SSI benefits." H.R. Rep. No. 103-506, at 85 (1994), *reprinted in* U.S.C.C.A.N. 1494; *see also* H.R. Conf. Rep. No. 103-670, at 147 (1994), *reprinted in* U.S.C.C.A.N. 1553 (the bill passed by Congress follows the House bill on this provision, but expands the scope of the provision to include claims under both title II and title XVI of the Act).

Nevertheless, Plaintiff contends that SSA should have allowed her "to present her defense against the allegations of fraud and . . . to cross-examine whomever the sources of the fraud allegations are" (Pl.'s Mem. at 10). However, Plaintiff misinterprets the statutory scheme. The necessary companion to the SSA OIG's authority to detect fraud in the Social Security programs is the power to determine whether there is "reason to believe" that a party may be engaged in "fraudulent" conduct. *See, e.g.*, *Standard Oil Co. of Cal. v. F.T.C.*, 596 F.2d 1381, 1385 (9th Cir. 1979), *rev'd on other grounds*, 449 U.S. 232 (1980). Intervention in the SSA OIG's legitimate decision-making process by holding individual mini-evidentiary trials in each case would thwart the SSA OIG's exercise of the authority granted to it by Congress. The May

---

systemic weaknesses in SSA programs and operations, and makes recommendations for needed improvements and corrective actions. *See* Office of the Inspector General's Strategic Plan for Fiscal Years 2016 through 2020, at 3-4 (revised Aug. 2015), available at https://oig.ssa.gov/strategic-plans (last visited on Aug. 16, 2016). Given the SSA OIG's mission, SSA is heavily reliant on its activities, particularly its investigative and hotline operations, to prevent, detect, investigate, and deter fraud against the agency.

2015 referral letter shows that the SSA OIG made its statutorily required "reason to believe" determination, and thereafter, SSA complied with its statutory mandate to "immediately" redetermine an individual's entitlement to benefits based on OIG's section 1129(l) referral of information. *Id*.

For the same reason, sections 205(b)(1) and 205(b)(2) of the Act do not apply here because the "reason to believe" fraud was involved in Plaintiff's application was not a decision made by the Commissioner under its statutory authority to adjudicate issues regarding pre- or post-entitlement to disability benefits. 42 U.S.C. §§ 405(b)(1), 405(b)(2). As explained above, the decision that there is a "reason to believe" that fraud may be involved is made by the SSA OIG under the authority granted in section 1129(l) of the Act. Moreover, the process that the agency is providing Plaintiff comports with procedural protections provided under the sections Plaintiff cites and to the extent there are differences, those differences are due to the nature and purpose of the redetermination statute. For example, a redetermination considers whether an individual was disabled at the time of the application, and thus, SSA only considers whether there is evidence to support the original entitlement to benefits, whereas in a reopening SSA looks to see if the individual is currently disabled. *Compare* SSR 16-1p, 81 Fed. Reg. 13436 (Mar. 14, 2016) *with* 42 U.S.C. § 405(b)(2) *and* 20 C.F.R. §§ 404.914(b), 416.1414(b). Here, SSA has acted consistently with the statutory scheme designed to protect the integrity of the entitlement program while providing Plaintiff with procedural protections that amply comport with any due process requirements. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("[D]ue process [requires] the opportunity to be heard at a meaningful time in a meaningful manner.") (quotations and internal citation omitted); *id.* at 340 (due process does not require evidentiary hearings prior to termination of disability benefits); *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)

(requiring that welfare recipients receive the opportunity for a pre-termination hearing that comports with "minimum procedural safeguards, adapted to the particular characteristics of welfare recipients, and to the limited nature of the controversies to be resolved.").

Plaintiff also challenges that the agency acted in an "arbitrary and capricious" manner by redetermining Plaintiff's entitlement to benefits based on the May 2015 OIG referral (Pl.'s Mem. at 13 n.9). However, the agency has no discretion to deviate from the redetermination process set forth in sections 205(u) and 1631(e)(7). *See* 42 U.S.C. §§ 405(u), 1383(e)(7); *see also Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to . . . discretion." (internal citations omitted)). Because the agency in these circumstances does not have the discretion to decide whether to conduct a redetermination or exclude evidence when the SSA OIG refers cases under section 1129(l), the Commissioner cannot have acted arbitrarily or capriciously in redetermining Plaintiff's case. *See Harkonen v. Sebelius*, No. C 13–0071 PJH, 2013 WL 5734918, *16 (N.D. Cal. Oct. 22, 2013) ("[B]ecause the Secretary had no discretion to exercise, her actions cannot be viewed as arbitrary and capricious").

For these reasons, Plaintiff has not demonstrated that her process-based claims can succeed as a matter of law.

        B.      <u>The Redeterminations Do Not Violate The APA</u>.

Plaintiff asserts that the APA's formal adjudication requirements apply to the sections 205(u) and 1631(e)(7) redetermination process (Pl.'s Mem. at 9), but such a claim is erroneous. The APA's formal hearing requirements are limited to adjudications "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a); *see also Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 548 (1978) (ruling that courts cannot require an agency to use more formal rulemaking procedures than

those required by statute); *PBGC v. LTV Corp.,* 496 U.S. 633, 654-55 (1990) (upholding an informal agency adjudication without an oral hearing when the statute did not require a hearing to be on the record). Under sections 205(u) and 1631(e)(7) of the Act, the agency must "immediately" redetermine an individual's entitlement to benefits if there is reason to believe that fraud or similar fault was involved in that person's application for benefits. When it conducts a redetermination, the agency is required to "disregard any evidence if there is reason to believe that fraud or similar fault was involved in providing such evidence." Although sections 205(u) and 1631(e)(7) do not require any hearing—let alone one on the record—as previously explained, Plaintiff is being provided with a number of procedural protections, including a hearing before an ALJ and the opportunity to provide evidence during that hearing to establish that she was entitled to benefits at the time of the application.

Plaintiff further argues that "adjudicators are effectively being directed by investigators or prosecutors within the agency" (Pl.'s Mem. at 11). Again, Plaintiff mischaracterizes the statute. An OIG referral under section 1129(l) of the Act simply triggers a process—it does not direct an outcome. It was Congress who directed the SSA OIG to provide information to SSA based on its reason to believe that fraud was involved in individuals' applications, and Congress who directed SSA to conduct redeterminations upon receipt of this information. *See* 42 U.S.C. §§ 405(u), 1320a-8(l), 1383(e)(7). Importantly, Congress vested exclusive authority in the Commissioner to decide to terminate benefits and assess an overpayment. The SSA OIG has no role in that determination—let alone the authority to direct such a decision. 42 U.S.C. §§ 405(u)(3), 1383(e)(7)(C). Plaintiff's arguments are thus unavailing.

Plaintiff also seems to suggest that the HALLEX manual I-1-3-25 (updated February 25, 2016), available at https://www.ssa.gov/ OP_Home/hallex/I-01/I-1-3-25.html, relating to

14

redeterminations requires notice-and-comment rulemaking under the APA (Pl.'s Mem. at 12 n.8). That argument can be easily rejected. As interpretative rules, "the HALLEX and other Social Security Rulings . . . are not subject to notice and comment rulemaking." *Robertson*, 2016 WL 3406134, * 2 ; *see also* 5 U.S.C. § 553(b)(3)(A)(excepting interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice from the notice and comment rulemaking requirements). And despite Plaintiff's suggestion to the contrary, these rules merely restate and apply sections 205(u) and 1631(e)(7)'s mandate that the agency redetermine entitlement to disability benefits if there is a reason to believe that fraud was involved in an individual's application and that, when redetermining eligibility, the agency disregard evidence if there is reason to believe that fraud was involved in the provision of the evidence. *See Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 679 (6th Cir. 2005); *First National Bank v. Sanders*, 946 F.2d 1185, 1188-89 (6th Cir. 1991) ("For purposes of the APA, substantive rules are rules that create law, while in contrast interpretive rules merely clarify or explain existing law or regulations and go to what the administrative officer thinks the statute or regulation means." (internal citations omitted)). Plaintiff's APA claims lack merit.

    C.    <u>The Redeterminations Do Not Violate The Social Security Act</u>.

Plaintiff erroneously asserts that her redetermination violates sections 205(u) and 1631(e)(7) of the Act—which require SSA to "immediately redetermine" an individual's entitlement to benefits—because SSA waited until May 2015 to take any action (Pl.'s Mem. at 13-20). However, as even Plaintiff admits, the statute specifically contemplates that the agency delay taking adverse action if it would jeopardize the criminal prosecution of a person involved in the suspected fraud (Pl.'s Mem. at 18). Moreover, the SSA OIG may delay referring cases to the agency for the same reason. *See* 42 U.S.C. § 1320a-8(l). Here, as contemplated by the

statute, SSA waited to notify individuals that their benefits would be redetermined until it received a referral from the SSA OIG permitting it to take such action.

On May 12, 2015, the agency received a referral from the SSA OIG pursuant to section 1129(1) of the Social Security Act, 42 U.S.C. § 1320a-8(1), informing SSA that it had reason to believe that fraud had been involved in 1,787 individuals' applications for benefits under titles II and XVI (Patel Decl. ¶ 3). In each of these cases, the referral stated that the OIG had reason to believe that Mr. Conn or his firm submitted pre-completed "template" forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, in support of each individual's application for benefits (Patel Decl. ¶ 3). The OIG informed the SSA that it could proceed with taking adverse action as a result of its redetermination of the cases under sections 205(u) and 1631(e)(7) of the Act, 42 U.S.C. §§ 405(u), 1383(e)(7) (*id*). Soon thereafter, SSA began to notify the affected individuals of the redeterminations, and that their cases would be remanded to an ALJ for further proceedings and a new decision (Patel Decl. ¶ 4). The individuals were informed that they had ten days to provide evidence that would allow the agency to make a decision without having to remand the case to an ALJ (Patel Decl. ¶ 4). Plaintiff requested—and was granted—an additional 30 days to submit evidence (*id.*), and additional extensions would have been granted upon a showing of good cause.

Thus, not only is there absolutely no merit to Plaintiff's assertion that the agency did not act in a timely manner, but even if there was some delay, there is no support in the statute for the proposition that delay somehow limits SSA from exercising its statutory mandate to redetermine entitlement to benefits if there is fraudulent information in the application for those benefits. Plaintiff's allegations that the agency was somehow complicit in the alleged delay does not

correct this deficiency in logic—for it does not follow (nor make sense) that any delay completely bars SSA from effectuating its statutory mandate to redetermine entitlement for benefits when there is a reason to believe that there was fraud in the application for those benefits. *See Brock v. Pierce Cty.*, 476 U.S. 253, 259 (1986) (agreeing with the Secretary that "courts should not impute to Congress the desire to remedy . . . a failure [to act timely] by preventing the Secretary from protecting both the public fisc and the integrity of a Government program."). For the reasons above, Plaintiff's claims must fail.

## II. Plaintiff Cannot Demonstrate She Will Suffer Irreparable Harm

To justify the requested injunctive relief, Plaintiff bears the burden of establishing that she is likely to be harmed irreparably before the case can be decided on the merits. *Winter*, 555 U.S. at 22. The "irreparable injury requirement erects a very high bar for a movant." *Air Transport Ass'n of Am., Inc. v. Export-Import Bank*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012). It is not sufficient for a plaintiff to demonstrate only a "possibility" of irreparable harm as that would be inconsistent with the Supreme Court's characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *See Winter*, 555 U.S. at 22. To demonstrate irreparable harm, a plaintiff must show "'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

Plaintiff's assertion that she will be irreparably harmed by the imminent termination of her disability insurance benefits (DIB) and supplemental security income (SSI) as well as concomitant health benefits[6] should be rejected (Pl.'s Mem. at 20-21). The Commissioner fully

---

[6] Plaintiff acknowledges that, since her disability benefits were terminated, she has applied for—and received—Medicaid insurance coverage (Pl.'s Mem. at 21 & Damron Affidavit at 2).

17

understands the importance of DIB and SSI to the people who need them, which is why the Commissioner has provided Plaintiff with ample procedural protections to protect against the possibility of any erroneous deprivation of benefits. As discussed above, Plaintiff has received a hearing before an ALJ and the opportunity to provide evidence during that hearing to establish that she was entitled to benefits at the time of the application. As Plaintiff avers, her benefits continued for the entirety of that process. Now, she has challenged the denial of those benefits in federal court. In light of the process afforded Plaintiff during SSA's redetermination of her eligibility for benefits, thus reducing the risk of erroneous deprivation, as well as her pending appeal in federal court, Plaintiff's alleged harm is entirely speculative and cannot be considered irreparable. *See Winter*, 555 U.S. at 22; *see also Carabillo v. ULLICO Inc. Pension Plan & Trust*, 355 F. Supp. 2d 49, 54 (D.D.C. 2004) (loss of health insurance benefits does not constitute per se irreparable harm for the purposes of a preliminary injunction), *aff'd sub nom. Carabillo v. Ullico Inc*, 198 F. App'x 1 (D.C. Cir. 2006).

Moreover, as discussed above, at any time during the redetermination process, Plaintiff was able to file a new application for disability benefits, which she has done (Damron Affidavit at 2). If SSA finds that Plaintiff is disabled under the Act, Plaintiff will be entitled to receive benefits. Plaintiff has not averred that she has applied for disability benefits and has been denied. Instead, she alleges that "SSA has forced [Plaintiff] to file a new claim for benefits and go through the normal, backlogged process for a new claim . . . [but] has still not gotten a decision" (Pl.'s Mem. at 19 n.23). Because the threat of injury must be both "real and immediate," not "conjectural" or "hypothetical," Plaintiff has not met the high burden of proving irreparable harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102(1983).

Therefore, given that the risk of wrongful termination of benefits is low, plus the fact that Plaintiff will get retroactive relief if the termination of benefits is wrong or current relief if she is approved for benefits based a new application, Plaintiff cannot demonstrate irreparable harm.

### III. Plaintiff Has Not Shown that the Balance of the Equities or Public Interest Favors Her Motion.

A party seeking a preliminary injunction must demonstrate both "that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "These factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109, 127 (D.D.C. 2015). These factors clearly do not favor Plaintiff.

Although SSA has an obligation to provide benefits to truly disabled individuals, the agency has a corresponding duty to protect the funds available for legitimate beneficiaries by ensuring that benefits are not erroneously paid to individuals who are not statutorily entitled to receive them. As sections 205(u) and 1631(e)(7) of the Act make clear, Congress wanted SSA to expeditiously terminate benefits whenever there is reason to believe that benefits were obtained fraudulently, and accordingly mandated that the agency "immediately redetermine the entitlement of individuals . . . if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits." 42 U.S.C. § 405(u)(1)(A); *see also* 42 U.S.C. § 1383(e)(7)(A)(i). The public interest lies in permitting SSA to follow the redetermination process that Congress has required. A court should not lightly interfere with this process—particularly where, as here, Plaintiff's claims are without legal or factual support.

### CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a).

                                                  Respectfully submitted,

                                                  KERRY B. HARVEY
                                                  UNITED STATES ATTORNEY

                               By:    /s/ John S. Osborn, III
                                                  JOHN S. OSBORN, III
                                                  Assistant United States Attorney
                                                  260 W. Vine Street, Suite 300
                                                  Lexington, Kentucky 40507-1612
                                                  Phone: (859) 685-4812
                                                  Facsimile: (859) 233-2533
                                                  John.Osborn@usdoj.gov

Of Counsel for the Defendant:

John Lee, Regional Chief Counsel, Denver
Laura Hope Holland, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region VIII
1961 Stout Street, Suite 4169
Denver, Colorado 80294-4003

## CERTIFICATE OF SERVICE

I certify that on September 8, 2016, I electronically filed the foregoing with the Clerk of Court

by using the CM/ECF system, which will send a notice of electronic filing to the following

CM/ECF participant, Evan B. Smith, Esq., Counsel for Plaintiff.

                                                  /s/ John S. Osborn, III
                                                  JOHN S. OSBORN, III
                                                  Assistant United States Attorney